JUDGE CROTTY

11 CIV 3983

## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

PUERTO 80 PROJECTS, S.L.U.,

        Plaintiff,

    v.

United States of America and
Department of Homeland Security,
Immigration and Customs Enforcement,

        Defendants.

Civil Action No.



**DECLARATION OF IGOR SEOANE MIÑÁN IN SUPPORT OF PUERTO
80'S PETITION FOR RELEASE OF SEIZED PROPERTY**

I, Igor Seoane Miñán, declare as follows:

1.     I am the CEO of Puerto 80 Projects, S.L.U. ("Puerto 80"), a limited liability corporation organized under the laws of Spain. I submit this declaration in support of Puerto 80's Petition for Release of Seized Property and other relief. The following are matters of my personal knowledge, except where otherwise noted, and I could and would testify competently thereto if called upon to do so.

2.     Puerto 80 has a possessory interest in rojadirecta.org and rojadirecta.com (the "subject domain names"), as it is the lawful owner of the subject domain names and operates the "Rojadirecta" site under these domain names.

3.     The subject domain names were registered with GoDaddy.com, Inc., which is a United States company located in Scottsdale, Arizona. As Daniel Brazier notes in his Affidavit in Support of the Application of a Seizure Warrant ("Brazier Affidavit"), the registry for all ".com" top-level domains is Verisign, Inc., 487 East Middlefield Road, Mountain View, California 94043. The registry for all ".org" top-level domains is The Public Interest Registry, 1775 Wiehle Avenue, Suite 200, Reston, Virginia 20190. The ".org" domain is administered by Afilias USA, Inc., Building 3, Suite 105, 300 Welsh Road Horsham, Pennsylvania 19044. The subject domain names will remain under the control of the registries and registrars at all times.

4.     As set forth in the Brazier Affidavit, the Rojadirecta sites do not themselves host unauthorized copies of the sporting events that Mr. Brazier describes. *See* Paras. 13, 40(a), 40(c). Rather, that content is hosted and/or streamed by third parties and it is never hosted or streamed at/by Rojadirecta. The Rojadirecta sites merely contain links to those sites.

5.     The advertisements described at para. 40(c) of the Brazier Affidavit are not run by Rojadirecta and Rojadirecta does not receive revenue from those advertisements.

6.     In addition to providing an index of links to material already existing on the Internet, the Rojadirecta sites provide forums in which users can discuss sports, politics, and any other topic.  Among these is a "highlights" forum in which users discuss sports highlights and link to clips of highlights from various sporting events.

7.     The activity on the Rojadirecta site has been expressly held to be lawful by the Spanish judiciary.  Following allegations of copyright infringement, the Criminal Court of First Instance ruled in 2009 that the Rojadirecta sites did not violate any copyright laws.  One year later, in an appeal of that decision, the Madrid Provincial Court, First District, affirmed the lower court's ruling and held that "the reported actions do not constitute a crime, and the [lower court's] decision to dismiss the action is in accordance with law."  A true and correct copy of those decisions, along with English translations, are attached hereto as Exhibits 1-2.

8.     The continued possession by the government pending the final disposition of forfeiture proceedings will prevent the functioning of the Rojadirecta site under the subject domain names in the United States and throughout a substantial part of the world, thus causing Puerto 80 substantial hardship. The site which operates under the subject domain names was (prior to the government's seizure) listed among the 100 most popular sites in Spain in terms of traffic according to Alexa Internet, a subsidiary of Amazon that provides, among other things, traffic metrics.

9.     Rojadirecta has users and visitors worldwide, including from the United States.

10.    Puerto 80 does not receive any revenue that is derived from specific content hosted on, or streamed by, the sites to which it links.  In other words, Puerto 80 does not receive any revenue whatsoever from any site to which a user can link from the subject domain names based upon the content of the web links to that site.  To the extent there is any site that a user can

2

link to from Rojadirecta which contains any infringing material, Puerto 80 receives no benefit from a user viewing such content on that site.

11.  The seizure of the subject domain names is depriving Puerto 80 of lawful business.  Further, this is a matter of considerable urgency, because Internet users who cannot access the Rojadirecta site for a sustained period of time will eventually stop trying.  As a result, the possibility of getting the subject domain names back months or even days from now will not solve the problem.  With each day that passes, we continue to face the risk that we will lose our ability to conduct our business altogether because users will stop attempting to visit our site, or will use the websites of our competitors. Since the date of the seizure, we have experienced approximately a 32% reduction in traffic in terms of visits to the Rojadirecta site.

12.  The continued possession by the government of the subject domain names causes immediate hardship in another respect. Rojadirecta has almost 865,000 registered users, many of whom use their accounts to engage in discussions of sports, politics, and a variety of other subjects on Rojadirecta discussion boards.  Because of the government's seizure of the subject domain names, those registered users are now unable to access their accounts from the subject domain names, and many or most are substantially impeded from accessing their existing accounts and the information they have stored on those accounts.

13.  As explained above, the subject domain names will remain under the control of the U.S.-based registries and registrars at all times. Thus, there is no risk that the domain names will be destroyed, damaged, lost, concealed, or transferred if they are returned to Puerto 80 during the pendency of this proceeding.

14.  I do not have any intent to use the subject domain names to commit criminal acts.

15.  The first time I learned that the subject domain names had been seized by the U.S.

3

government was when I visited rojadirecta.org and rojadirecta.com on February 1, 2011, and

discovered that the U.S. government had made the site's content inaccessible via those domain

names name and pointed the domain names to another web page stating that the domain had been

seized by ICE.

16.    I have not received any notice from the U.S. government that forfeiture

proceedings have been instituted against the subject domain names.

I declare under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct. Executed on this **11** day of June 2011 in A CORUÑA , Spain.

Igor Seoane Miñán

4

# EXHIBIT 1

# TRANSLATION STATEMENT

February 10, 2011

To whom it may concern:

I, Lisa Grayson, do hereby swear and certify the following:

1. That I am certified by the American Translators Association (ATA) for translation from Spanish into English, and that my ATA membership is in good standing;

2. That the following page is a valid copy of my ATA credential certificate, altered only to prevent duplication;

3. That the attached English-language document is my translation of the fax cover sheet and court verdict that I received from Durie Tangri LLP, a copy of which is attached after the English translation;

4. That, to the best of my knowledge, the English document is an accurate and faithful translation of the document I received from Durie Tangri LLP.

Lisa Grayson
ATA Member No. 224476



LISA GRAYSON   2502 W. Eastwood Avenue   Chicago, Illinois 60625   (773) 463-8128

e-mail: lisa@publica.com



THE AMERICAN TRANSLATORS ASSOCIATION
Founded in 1959

Having successfully completed the examination required by the Committee on Accreditation,

Copy invalid unless accompanied by original letter
signed by Lisa A. Grayson
Lisa A. Grayson

a Member in good standing of the Association, subscribing to its Code of Professional Conduct and Business Practices, is granted this

Copy invalid unless accompanied by original letter
signed by Lisa A. Grayson

for translation from Spanish into English

Issued under the seal of the Association this June 27, 2001

Shuctran Kamal
Chair, ATA Accreditation Committee

Ann G. Macfarlane
President, ATA

Courtney Searls-Ridge
Secretary, ATA

This certificate is valid only in combination with membership in good standing in the American Translators Association.

[copy invalid unless accompanied by original letter
signed by Lisa Grayson]

**RAMON BLANCO BLANCO**
**Court Attorney**
**Madrid Capital Judicial District**

Tax I.D. No.: 51.667.890-T

(address:) C/Mequinenza No. 9 = 1st Floor
Madrid 28022, Spain
Telephone and fax: 91.320.93.56
Mobile: 610.54.44.34
ramonblancoblanco@hotmail.com

## FAX TRANSMISSION

ADDRESSEE:          Mr. JAVIER MAESTRE RODRIGUEZ (Attorney at Law)
FAX NUMBER:         91.222.67.95
DATE:               May 7, 2010

SUBJECT:            Summary proceedings
COURT:              No. 37
COURT RECORD NO.    2517/07 roll 51/2010
CLIENT:             Mr. Igor Seoane Miñán

## MESSAGE

Dear colleague:

I am sending you the attached decree, issued today.

Please accept my best wishes.

(signature)

No. of pages including attachment: 8

Roll number 51/2010

Previous Proceedings number 2517/2008

Madrid Pre-trial Investigation Court number 37

**MADRID PROVINCIAL COURT**

**FIRST DIVISION**

| (rubber stamp) |
| --- |
| Honorable Assembly of Court Attorneys of Madrid |
| Received     Notification |
| MAY 6, 2010    MAY 7, 2010 |
| Article 151.2   L.E.C. 1/2000 |

The Honorable

President:

    Mr. Alejandro María Benito López

Magistrates:

    Ms. Araceli Perdices López

    Mr. Eduardo de Porres Ortiz de Urbina

**DECREE No. 364/10**

In Madrid, on April twenty-seventh, two thousand ten

**BACKGROUND**

**FIRST** — On July 15, 2009, the Honorable Magistrate Judge of Madrid Pre-trial Investigation Court number 37 issued a decree in which the provisional dismissal of action and the file of these proceedings was agreed to. The parties having been notified, the legal representative of AUDIOVISUAL SPORT S.L. filed an appeal, which has been transferred to the Public Prosecutor's Office and other parties who have requested rejection of the appeal.

**SECOND** — Timely reports of the legal proceedings having been filed in this Court for the resolution of the appeal,

the date of April 8, 2010, has been indicated for the
deliberation, voting, and verdict, appointing Mr. Eduardo de
Porres Ortiz de Urbina to express the Court's opinion.

### FUNDAMENTALS OF LAW

**FIRST-** The present proceedings investigate the Web page
www.rojadirecta.com, a page that is based on "links" that allow
for the download, through "door-to-door" exchange programs, of
archives or files of diverse content between different users or
guests, specifically, football[1] games from other countries and
whose rights for usage in Spain belong to the complainant,
Audioviosual (sic) Sport S.L.

The particular charge is made with the understanding that there
is an act of public communication of works protected by the
Intellectual Property Law without authorization from the
respective owners.

It is currently a generally accepted criterion that the act of
downloading files from the Internet does not constitute a crime.
It suffices to cite the criterion from Circular 1/2006 from the
State General Prosecutor's Office to show the relevance of this
factor. The above-mentioned Circular confirms the following:

> In regard to determining the type of conduct of
> someone who gathers protected works through a server
> on a Web site, without the authorization of the owner
> of the rights of use, it can be included ???? in the
> assumptions of unauthorized communication, but in this
> case, if no consideration is given for it, the typical
> element of profit does not coexist, this conduct can
> be legally pursued only as an illicit civil action. In

---

[1] This presumably means European football, i.e., soccer.

> *regard to the user who "downloads or receives" a work*
> *"from the Internet" without [financial] consideration*
> *as a result of an act of unauthorized communication*
> *made by another person, making a private copy of the*
> *work that cannot be considered conduct of a criminal*
> *nature. In regard to [typo; letters or word missing]*
> *the responsibility of the company's information*
> *service providers, they will not be responsible when*
> *the service they offer is one of simple*
> *intermediation, within the terms established in*
> *Articles 14 to 18 of Law 34.2002, dated July 11*
> *[2002], of services of the information or electronic*
> *commerce company.*

Notwithstanding the foregoing, in this proceeding what has been investigated and questioned is not the activity of the persons who are part of the file exchange network, but rather the activity of those responsible for the Web page that provides this service, and who also gain an economic advantage from their activity no matter how indirect it may be, since the charge is not paid, only the publicity of the insert on the page itself, which is seen independent of what is produced or not downloaded.

Those responsible for the Web page do not directly commit acts of public communication of works protected by the LPI [Intellectual Property Law], since the downloaded items are not located in their files. They only encourage this behavior by the means in which they select, make available, and inform about how to access the pages that offer the games' retransmission.

Far from contemptible is the position of those who maintain that if the investigative activity is advantageous together with and as a function of the final result, the Web pages such as the one under investigation could be publicly offering protected works and performing those necessary acts of support so that Internet

users can communicate and use this public offering of the work. Their labor, from this perspective, would not be that of mere intermediation but the heart of activity that advertises and makes possible the massive exchange of files for the users who, without this publicity and organization, could not do it or could do it in a significantly more limited way. The work of making available and offering public works constitutes an unauthorized act of public communication more because technically it is the user and not the provider who in fact puts the file at public disposal. The provider advertises and offers the protected work to the users in a public way, and in some cases facilitates the technical means so that the users can connect among themselves and make the download. Such a position could have support in Article 20 of the LPI, in which the concept of "public communication" in open form is defined, inasmuch as that precept defines that legal concept broadly as follows: *"Any act through which a plurality of persons can have access to the work without prior distribution of samples of each one of them. Communication is not considered public when it takes place within a strictly domestic environment that is integrated or connected to a broadcast network of any type."*

Nevertheless, the following considerations should be made:
a)      Addressing the actions reported in this process, one cannot get around the fact that the Web page in question does not keep the files, nor does it directly make the download. The files are transferred through download programs broadly available among Internet users.
b)      The actions of making available and advertising the games that are transferred facilitate download, but they do not provide the means of doing so; therefore, in principle, the can be qualified as acts of mere intermediation.
c)      On the other hand, the fees that the Web page administrators receive do not pay for the download of the public titles; rather, it is the publicity that comes from generic

access to the page, which is independent of the publicity and which can be produced even if there is no download.

d)     The operators of the web page, such as they are listed in the accusing legal record, do not facilitate the removal of protection from the key codes for viewing the sporting events, nor do they make connections with programs that do so; rather, they only facilitate the viewing of television programs that are broadcast openly.

For all of the above reasons, the reported actions do not constitute a crime, and the decision to dismiss the action is in accordance with law. Furthermore, in regard to a similar claim made by the plaintiff against a different Web page with similar content (www.tvmix.net), this Provincial Court already ruled on November 3, 2008 (Section 5) in which the Court was asked if the party responsible for a Web page that facilitated links to view football games from abroad committed a crime or induced the commission of a crime, and responded as follows:

> *"No in both cases, because except for what is clarified in the following and final conclusion, the programs that invite or encourage utilization are freely available, their use is open and universal, because they do not require any use license, and as a result, for the reported actions, the subject of this report, no legal infraction was committed, although indeed in some cases a third-party economic complaint results. It is for this reason that Article 270 of the CP (Criminal Code) does not apply either; it requires economic damage and profit motive. In regard to the economic damage imputed to the owners of the broadcast rights of National League games, said damage has not been determined, given the ever-changing world of*

*the Internet, in which proof of either case becomes practically impossible, therefore it is lacking a determinant element of this [proof] (STS 1578/02), nor of the existence of a profit motive on the part of the defendant who, according to the experts appearing in the proceedings, did not receive any type of benefit for serving as a "link," but from indirect remuneration from the Web portal publicity. In this same context, we emphasize the Supreme Court sentence 529/2001 of April 2, 2001, which indicates that that which is punishable are the importing of stolen works, but not those legally acquired abroad, even though their commercialization in Spain has not been authorized here, so that the title owner can defend against such conduct through preventive injunctions and the system of responsibility outlined in Article 138 ff. of the Intellectual Property [Law]. It can be assumed that this can be applied to the typical conduct of Article 286, which has not been violated in this case either."*

These same criteria are applicable to the present case, in which the denounced actions completely lack criminal relevance.

For all of the above reasons, the appeal is denied.

**SECOND** — Not having found the parties acting in bad faith and in given the denial of the appeal, the costs for this appellate hearing should be declared the court's own, as authorized by Articles 239 of the Law of Criminal Judgment.

### ORDER OF THE COURT

**THE COURT AGREES:** WE DENY the appeal petition filed by the legal representative of AUDIOVISUAL SPORT S.L. against the court order of July 15, 2009, issued by Instructing Court number 37 of Madrid

(Previous Proceedings 2517/2007), which we confirm in its entirety, declaring the costs of this appellate hearing "de oficio" [the court's own expenses].

Notice of this verdict shall be posted, against which there is no further appeal, and the Instructing Court shall be informed, including certification of this verdict.

The Magistrates listed in the margin agree, confirm, and sign this decision, which I certify.

07-05-10   13:26 913209356        BLANCOPROCURADOR->934882792 ECM                    PAG. 01

**RAMON BLANCO BLANCO**
Procurador de los Tribunales
Partido Judicial de Madrid Capital
--------------
N.I.F.: 51.667.890-T

C/ Mequinenza nº 9 -1º C
28022 Madrid
Telefono y fax : 91.320.93.56
Móvil: 610.54.44.34
ramonblancoblanco@hotmail.com

# TRANSMISION DE FAX

**DESTINATARIO:** D. JAVIER MAESTRE RODRIGUEZ (Letrado)
**Nº DE FAX:** 91.222.67.95
**FECHA:** 7 de mayo de 2010

**ASUNTO:** Procedimiento abreviado
**JUZGADO/TRIBUNAL:** Instrucción nº 37   A.P sección 1
**Nº DE AUTOS:** 2517/07   rollo 51/2010
**CLIENTE:** D. Igor Seoane Miñán

## MENSAJE

Estimado compañero:

Adjunto te envío auto notificado en el día de la fecha.

Sin otro particular, recibe un fuerte abrazo.

Nº de páginas incluida carátula: 8



Rollo número 51/2010

Diligencias Previas número 2517/2008

Juzgado de Instrucción número 37 de Madrid

**AUDIENCIA PROVINCIAL DE MADRID**

**SECCION PRIMERA**

ILUSTRE COLEGIO PROCURADORES DE MADRID

RECEPCIÓN                NOTIFICACIÓN

6 MAY 2010              7 MAY 2010

Artículo 151.2    L.E.C. 1/2000

Ilmos. Sres.

Presidente:

　　　Don Alejandro María Benito López

Magistrados:

　　　Doña Araceli Perdices López

　　　Don Eduardo de Porres Ortiz de Urbina

## AUTO Nº   364/10

En Madrid, a veintisiete de abril de dos mil diez

### ANTECEDENTES

**PRIMERO.-**   El día 15 de Julio de 2009  el/la Ilmo/a Sr/a Magistrado/a Juez del Juzgado de Instrucción número 37  de Madrid   dictó  auto  por  el  que  acordó  el  sobreseimiento provisional  y  archivo  de  las  presentes  diligencias. Notificado  a  las  partes,  la  representación  procesal  de AUDIOVISUAL SPORT S.L. interpuso de apelación del que se ha dado traslado al Ministerio Fiscal y demás partes quienes han solicitado la desestimación del recurso.

**SEGUNDO.-**  Remitido el oportuno testimonio de las actuaciones a este Tribunal para la resolución del recurso se ha señalado



Madrid



el día 8 de Abril de 2010 para la deliberación, votación y fallo, designándose Ponente a Don Eduardo de Porres Ortiz de Urbina, que expresa el parecer de la Sala.

## FUNDAMENTOS DE DERECHO

**PRIMERO.-** En las presentes diligencias se investiga la página Web www.rojadirecta.com, página que se basa en "elinks" que permiten bajar, a través de programas de intercambio "puerto a puerto" archivos o ficheros de contenido diverso entre los distintos usuarios o invitados, en concreto, partidos de fútbol emitidos en otros países y cuyos derechos de explotación en España corresponden a la querellante, Audiovisual Sport S.L.

La acusación particular entiende que existe un acto de comunicación pública de obras protegidas por la Ley de Propiedad Intelectual sin autorización de los respectivos titulares.

Es un criterio generalizado actualmente que la actividad de descarga de archivos a través de Internet no es constitutiva de delito. Baste citar el criterio de la Circular 1/2006 de la Fiscalía General del Estado para poner de relevancia esa circunstancia. En la referida Circular se afirma lo siguiente:

> En cuanto a la tipificación de la conducta de quien coloca a través de un servidor en un sitio de la Red obras protegidas sin autorización del titular de los derechos de explotación, puede incardinarse dentro de los supuestos de comunicación no autorizada, pero en este supuesto si no está acreditada ninguna contraprestación para él, no concurrirá el elemento típico del ánimo de lucro, pudiendo perseguirse esa conducta sólo como ilícito civil. Respecto del usuario



Madrid



> que *"baja o se descarga de la Red" una obra, y obtiene
> ésta sin contraprestación, como consecuencia de un acto
> de comunicación no autorizado realizado por otro,
> realiza una copia privada de la obra que no puede ser
> considerado como conducta penalmente típica. En lo que
> respecta e la responsabilidad de los proveedores de
> servicios en la sociedad de la información, los mismos
> no serán responsables cuando el servicio que prestan sea
> el de simple intermediación, dentro de los términos que
> establecen los artículos 14 a 18 de la Ley 34/2002, de
> 11 da julio, de .servicios de la sociedad de la
> información y de comercio electrónico.*

No obstante lo anterior, en este proceso lo que s ha
investigado y cuestiona no es la actividad de las personas que
se integran en la red de intercambio de archivos sino la de
los responsables de la página que provee este servicio, y que
obtienen además una ventaja económica por su actividad por más
que sea indirecta, ya que no se retribuye la descarga sino la
publicidad de la inserta en la propia página y que se
visualiza con independencia de que se produzca o no descarga.

Los responsables de la página no realizan de forma directa
actos de comunicación pública de obras protegidas por la LPI
ya que no alojan en sus archivos los títulos descargados.
Únicamente favorecen esa conducta en la medida en que
seleccionan, ordenan e informan sobre la forma de acceder a
las páginas que ofrecen la retransmisión de partidos.

No es desdeñable la postura de quienes sostienen que si se
valora la actividad investigada de conjunto y en función del
resultado final, las páginas web como la investigada pudieran
estar ofertando públicamente obras protegidas y realizando los
actos de apoyo necesarios para que los usuarios de la red se
comuniquen y utilicen esa oferta pública de las obras. Su
labor, desde esta perspectiva, no sería de mera intermediación



Madrid



sino el núcleo de actividad que anuncia y posibilita el intercambio masivo de archivos a los usuarios que, sin esa publicidad y organización, no podrían hacerlo o lo podrían hacer de forma significativamente más limitada. Las labores de ordenación y oferta de las obras podrían constituir un acto de comunicación pública no autorizada por más que técnicamente sea el usuario y no el proveedor quien de facto ponga a disposición del público el archivo. El proveedor anuncia y oferta a los usuarios de forma pública la obra protegida y facilita en algunos casos los medios técnicos para que los usuarios enlacen entre sí y realicen la descarga. Tal posición podría tener apoyo en el artículo 20 de la LPI en el que se define el concepto de "comunicación pública" de forma abierta en cuanto dicho precepto define ese concepto jurídica de forma amplia de la siguiente forma: *"todo acto por el cual una pluralidad de personas pueda tener acceso a la obra sin previa distribución de ejemplares de cada una de ellas. No se considerará pública la comunicación cuando se celebre dentro de un ámbito estrictamente doméstico que esté integrado o conectada a una red de difusión de cualquier tipo"*.

Sin embargo, deben hacerse las siguientes consideraciones:

a) En atención a los hechos acreditados en este proceso no puede soslayarse la circunstancia de que la página web investigada no aloja los archivos, ni realiza directamente la descarga. Los archivos se transfieren a través de programas de descarga de amplia difusión entre los usuarios de Internet.

b) Los actos de ordenación y anuncio de los partidos que se transfieren facilitan la descarga pero no pueden equipararse a ésta, por lo que, en principio podrían calificarse de actos de mera intermediación.

c) Por otra parte, la retribución que obtienen los administradores de la página no compensa la descarga de los



Madrid



títulos sino la publicidad derivada del acceso genérico a la
página, que es independiente de ésta y que se puede producir
aunque no haya descarga.


d) Los gestores de la página, tal y como se indica en el auto
impugnado, no facilitan la desprotección de los códigos claves
para el visionado de los eventos deportivos, ni realizan
conexiones con programas de desprotección, sino que facilitan
únicamente el visionado de programas de televisión emitidos en
abierto.

Por todo ello, los hechos denunciados no son constitutivos de
delito y la decisión de sobreseer las actuaciones es conforme
a derecho. A mayor abundamiento, sobre una reclamación similar
efectuada por la denunciante contra otra página de contenido
similar (www.tvmix.net) ya se ha pronunciado esta Audiencia
Provincial en sentencia  de 3 de Noviembre de 2008 (Sección
5ª) en la que el Tribunal se preguntaba si el responsable de
una página WEB que facilitaba enlaces para ver partidos de
fútbol desde el extranjero cometía delito o  inducía a la
comisión de un delito y respondía en los siguientes términos:

> *"No en ambos casos, porque a reserva de lo que se*
> *dilucide con la siguiente y última conclusión, los*
> *programas que invita o incluso incita a utilizar, son de*
> *libre uso, y su utilización es abierta y universal, por*
> *lo que no necesitan ninguna licencia de uso, y en*
> *consecuencia, para los hechos denunciados, objeto de*
> *este informe, no se comete ninguna infracción, aunque sí*
> *se produce en algunos casos quebranto económico a*
> *terceros. Es por ello que tampoco quedaría acreditado el*
> *artículo 270 del CP que precisa de un perjuicio*
> *económico y de un ánimo de lucro. En relación al*
> *perjuicio económico inferido a los titulares de los*
> *derechos de emisión de los partidos de Liga Nacional no*
> *se ha podido determinar el mismo dado el movedizo mundo*





*de Internet en el que la prueba de tal extremo resulta prácticamente imposible, por lo que faltaría un elemento determinante de éste (STS 1578/02) ni tampoco la existencia de un ánimo de lucro por parte del imputado que según las periciales obrantes en las actuaciones no obtenía ningún tipo de beneficio por servir de "link" sino por la remuneración indirecta de la publicidad del portal. En este mismo contexto destaca la sentencia del Tribunal Supremo 529/2001 de 2 de abril en la que indica que lo sancionable son la importación de las obras usurpadas pero no las adquiridas lícitamente en el extranjero aunque su comercialización en España no haya sido aquí autorizada, por lo que de esa conducta puede defenderse el titular mediante las medidas cautelares y sistema de responsabilidad previsto en el artículo 138 y s.s. de la Propiedad Intelectual. Supuesto este extrapolable a la conducta típica del artículo 286 que tampoco se vería conculcado en el presente supuesto".*

Estos mismos criterios son aplicables al presente caso lo que abunda en la falta de relevancia penal de los hechos denunciados.

Por todo lo expuesto, procede la desestimación del recurso.

**SEGUNDO.-** No apreciándose mala fe y pese a la desestimación del recurso deben declararse de oficio las costas procesales de esta alzada, según autorizan los artículos 239 y concordantes de la Ley de Enjuiciamiento Criminal.

### PARTE DISPOSITIVA

**LA SALA ACUERDA:** DESESTIMAMOS el recurso de apelación interpuesto por la representación procesal de AUDIOVISUAL SPORT S.L. contra el auto de fecha 15 de Julio de 2009 dictado por el Juzgado de Instrucción número 37 de Madrid



Madrid



(Diligencias Previas2517/2007), que confirmamos íntegramente, declarando de oficio las costas de esta alzada.

Notifíquese   esta resolución, contra la que no cabe recurso alguno, y póngase en conocimiento del Juzgado de Instrucción, remitiendo certificación de la presente resolución.

Lo acuerdan, mandan y firman los Sres. Magistrados que figuran al margen, lo que certifico.



Madrid

# EXHIBIT 2

# T R A N S L A T I O N   S T A T E M E N T

February 10, 2011

To whom it may concern:

I, Lisa Grayson, do hereby swear and certify the following:

1. That I am certified by the American Translators Association (ATA) for translation from Spanish into English, and that my ATA membership is in good standing;

2. That the following page is a valid copy of my ATA credential certificate, altered only to prevent duplication;

3. That the attached English-language document is my translation of the fax cover sheet and court verdict that I received from Durie Tangri LLP, a copy of which is attached after the English translation;

4. That, to the best of my knowledge, the English document is an accurate and faithful translation of the document I received from Durie Tangri LLP.

Lisa Grayson
ATA Member No. 224476



LISA GRAYSON   2502 W. Eastwood Avenue   Chicago, Illinois 60625   (773) 463-8128     e-mail: lisa@publica.com



ata

THE AMERICAN TRANSLATORS ASSOCIATION
Founded in 1959

Having successfully completed the examination required by the Committee on Accreditation,

Lisa A. Grayson

a Member in good standing of the Association, subscribing to its Code of Professional Conduct and Business Practices, is granted this

Certificate of Accreditation
for translation from Spanish into English

Issued under the seal of the Association this June 27, 2001

Shuckran Kamal
Chair, ATA Accreditation Committee

Ann G. Macfarlane
President, ATA

Courtney Searls-Ridge
Secretary, ATA

This certificate is valid only in combination with membership in good standing in the American Translators Association.

Copy invalid unless accompanied by original letter
signed by Lisa Grayson

**RAMON BLANCO BLANCO**
**Court Attorney**
**Madrid Capital Judicial District**

Tax I.D. No.: 51.667.890-T

(address:) C/Mequinenza No. 9 = 1ˢᵗ Floor
Madrid 28022, Spain
Telephone and fax: 91.320.93.56
Mobile: 610.54.44.34
ramonblancoblanco@hotmail.com

## FAX TRANSMISSION

ADDRESSEE:      Mr. JAVIER MAESTRE RODRIGUEZ (Attorney at Law)
FAX NUMBER:    91.222.67.95
DATE:                  July 20, 2009

SUBJECT:              Summary proceedings
COURT:                 No. 37
COURT RECORD NO. 2517/07
CLIENT:                 Mr. Igor Seoane Miñán

## MESSAGE

Dear colleague:

I am sending you the attached dismissal of action, issued today.

Please accept my best wishes.

(signature)

No. of pages including attachment: 3

PRE-TRIAL INVESTIGATION COURT NO. 37
MADRID
(address) PLAZA DE CASTILLA 1, 6th Floor
Telephone: (illegible)  Fax: (illegible)

Identification Number: (illegible)

## D E C R E E

In Madrid, on July fifteenth, two thousand nine

### FACTS

**SOLE FACT** — The current proceeding was started by the actions that resulted from the previous legal proceedings, due investigative diligence having been practiced as indicated in court records.

### LEGAL REASONING

**SOLE ISSUE** — From the diligence carried out, that is, declarations of the accused and an expert report on file in court records, it is clear that the Internet pages administered by the accused did not facilitate the removal of protection from the key codes for viewing the sporting events, nor did they create a connection with protection-removal programs; rather, what they facilitated were links to download programs that allowed the viewing of such events that, although (the events) were with access through a coded system in Spain, are openly broadcast on International TV channels; it does not follow that the harmful conduct of the accused, nor the programs they made available were not freely used, their use being open and universal, not obtaining from another party the denounced direct benefits by facilitating such links, but rather indirect remuneration of the web portal publicity.

For the above reasons, it not appearing that the commission of a criminal infraction has been duly proved, the provisional dismissal of action hereby proceeds, and closing the file of the actions taken in application[1] of the provisions of Article 779.1, section 1, of the Criminal Judgment Law as related to section no. 1 of Article 641 of the same legal text.

### ORDER OF THE COURT

THE PROVISIONAL DISMISSAL OF ACTION AND CLOSING THE FILE OF THE PRESENT CLAIM IS HEREBY APPROVED.

---

[1] Typo in original. I am assuming that *apalicación* should have been *aplicación* (application).

The Prosecutor's Office and other interested parties shall be notified of this resolution, alerting them that they may file a petition for review and/or appeal against the decision before this Court within a period of THREE DAYS.

Thus agrees, orders, and signs Ms. PURIFICACION ELISA ROMERO PAREDES, MAGISTRATE-JUDGE of the Madrid Pre-trial Investigation Court No. 37 and the Judicial District. I hereby swear.

**RAMON BLANCO BLANCO**
Procurador de los Tribunales
Partido Judicial de Madrid Capital
—————
N.I.F · 51.667.890-T

C/ Mequinenza nº 9 -1º C
28022 Madrid
Teléfono y fax : 91.320.93.56
Móvil: 610.54.44.34
ramonblancoblanco@hotmail.com

# TRANSMISION DE FAX

**DESTINATARIO:** D. JAVIER MAESTRE RODRIGUEZ (Letrado)
**Nº DE FAX:** 91.222.67.95
**FECHA:** 20 de julio de 2009

**ASUNTO:** Procedimiento abreviado
**JUZGADO/TRIBUNAL:** Instrucción nº 37
**Nº DE AUTOS:** 2517/07
**CLIENTE:** D. Igor Seoane Miñán

## MENSAJE

Estimado compañero:

Adjunto te envío auto de sobreseimiento notificado en el día de la fecha.

Sin otro particular, recibe un fuerte abrazo.

Nº de páginas incluida carátula: 3

47500

## JUZGADO DE INSTRUCCION nº 37
MADRID

PLAZA DE CASTILLA,1,6ª PLANTA

Teléfono: 91-4932275 76-77 Fax: 91-491227R

Número de Identificación Único: 28072 2 0228399 /2007

DILIGENCIAS PREVIAS PROC. ABREVIADO 5432/2007

A U T O 17

En MADRID  a quince de julio de dos mil nueve .

Dada cuenta; y

### HECHOS

UNICO.- El  presente procedimiento se incoó por los hechos
que resultan de las anteriores actuaciones, habiéndose
practicado las diligencias de investigación que constan en
autos.

### RAZONAMIENTOS JURÍDICOS

UNICO.-   De   lasx   diligencias  practicadas, a  saber,
declaraciones de  los imputados e informe pericial obrante
en   autos,  se  desprende  que  las  paginas  de  internet
administradas   por   los   imputados   no   facilitan   la
desproteccion de lols codigos claves para el visionadol de
los   eventos   deportivos,   ni  realizan  conexiones  con
programas  de  desproteccion,  sino  que  lo que facilitaban
son  enlaces  para  descargar  programas  que  permitian  el
visionado  de  tales  eventos  que,  aunque  con  acceso  de
sistema  codificado  en  España,  son  emitidos  en  abierto por
canales   de  TV  Internacional;  no  se  desprende  ni  el
comportamiento  doloso  de  los  imputados,  ni  que  los
programas  que  se  facilitaban  no  fuesen  de  libre uso,
siendo  su  utilizacion  abierta  y  universal,  no obteniendo
por  otra  parte  los  denunciados  beneficios  directos por
facilitar  tales  enlaces,  sino  remuneracion  indirecta de la
publicidad del portal.

Por   lo   expuesto,   no   apareciendo  debidamente
justificada  la  perpetracion  de  infraccion  penal, procede
el  sobreseimiento  provisional  y  archivo  de  las  actuaciones
en  apalicacion  de  lo  dispuesto  en  el  articulo  779.1, 1º de
la  Ley  de  Enjuiciamiento  Criminal  en  relacion  con el num.
1º del articulo 641 del mismo Texto Legal.

### PARTE DISPOSITIVA

SE ACUERDA EL SOBRESEIMIENTO PROVISIONAL Y EL ARCHIVO DE LA
PRESENTE CAUSA.



Póngase esta resolución en conocimiento del Ministerio Fiscal y demás partes personadas, previniéndoles que contra la misma podrán interponer, ante este Juzgado, recurso de reforma y/o apelación, en el plazo de TRES DIAS.

Así lo acuerda, manda y firma D. PURIFICACION ELISA ROMERO PAREDES , MAGISTRADO-JUEZ del Juzgado de Instrucción nº 37 de MADRID y su partido.- Doy fe.

