UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - x
                           :

PUERTO 80 PROJECTS, S.L.U.,    :

              Plaintiff,

                       :     No. 11-CV-3983(PAC)(FM)

      - v. -                  :

UNITED STATES OF AMERICA AND
DEPARTMENT OF HOMELAND SECURITY,  :
IMMIGRATION AND CUSTOMS
ENFORCEMENT,                     :

              Defendants.    :

- - - - - - - - - - - - - - - - - x

**GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO PETITION OF PUERTO 80 PROJECTS, S.L.U. SEEKING RELEASE OF SEIZED PROPERTY PURSUANT TO 18 U.S.C. § 983(f)**

                         PREET BHARARA
                         United States Attorney for the
                         Southern District of New York,
                         Attorney for the United States
                              of America

Christopher D. Frey
David I. Miller
Assistant United States Attorneys

    - Of Counsel -

## TABLE OF CONTENTS

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . 1

FACTS . . . . . . . . . . . . . . . . . . . . . . . . . 3

PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . 6

STATUTORY FRAMEWORK . . . . . . . . . . . . . . . . . . 7

STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . 10

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . 10

I.   THE PETITION OF PUERTO 80 MUST BE DENIED BECAUSE IT
     HAS NOT SATISFIED ITS BURDEN OF DEMONSTRATING THAT
     THE REQUISITE FACTORS UNDER SECTION 983(f) ARE MET   . .  10

     A.   Puerto 80 Has Failed To Demonstrate "Substantial
          Hardship" As Required By Section 983(f). . . . . .  11

     B.   The Petition Should Be Denied Because Returning
          The Seized Property Would Afford Puerto 80 The
          Ability To Commit Additional Criminal Acts. . . . .  16

          1.   Puerto 80 Engaged in Criminal Copyright
               Infringement Prior to the Government's
               Seizure of the Rojadirecta Domain Names. . . .  17

               a.   The Existence of a Valid Copyright. . . .  18

               b.   Infringing Acts. . . . . . . . . . . . .  18

               c.   Willfulness. . . . . . . . . . . . . . .  22

               d.   Financial Gain. . . . . . . . . . . . . .  24

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . 26

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - x
                                    :
PUERTO 80 PROJECTS, S.L.U.,         :
                                    :
                Plaintiff,          :
                                    :      No. 11-CV-3983(PAC)(FM)
         - v. -                     :
                                    :
UNITED STATES OF AMERICA AND        :
DEPARTMENT OF HOMELAND SECURITY,    :
IMMIGRATION AND CUSTOMS             :
ENFORCEMENT,                        :
                                    :
                Defendants.         :
                                    :
- - - - - - - - - - - - - - - - x

## PRELIMINARY STATEMENT

The United States of America and the U.S. Department of Homeland Security, Bureau of Immigration and Customs Enforcement (the "Government"), by their attorney, Preet Bharara, United States Attorney for the Southern District of New York, Christopher D. Frey and David I. Miller, Assistant United States Attorneys, of counsel, submit this memorandum of law in opposition to the petition of Puerto 80 Projects, S.L.U. ("Puerto 80") for the return of seized property pursuant to Title 18, United States Code, Section 983(f).

By way of its petition, Puerto 80 seeks the immediate release of two domain names, specifically, rojadirecta.com and rojadirecta.org (collectively, the "Rojadirecta Domain Names"), seized by the U.S. Department Homeland Security, Immigration and Customs Enforcement ("ICE"), pursuant to federal seizure warrants obtained in the Southern District of New York and issued by the

Honorable Frank Maas, United States Magistrate Judge, on January 31, 2011.  In attempting to provide justification for granting this extreme remedy, Puerto 80 seeks to characterize the website it operated under the Rojadirecta Domain Names as an online discussion forum and, in so doing, would have this Court decide, on an expedited basis and without a fully developed factual record, a variety of issues that are more properly raised either in a motion to dismiss the Government's Verified Complaint[1] or following a period of discovery.  Indeed, through its petition, Puerto 80 is attempting to use a limited provision of forfeiture law designed to provide relief in only the rarest of circumstances in order to mount a broader challenge to a widely employed tool of law enforcement.  Because real questions of fact exist here concerning, among other things, what exactly Puerto 80's website is and how Puerto 80 profits by operating it, the Government respectfully submits that this Court should resist Puerto 80's invitation to engage in such an undertaking.

Viewed properly, the instant petition must be denied because Puerto 80 simply has not met its burden of demonstrating that all of the requisite factors under Section 983(f) of Title 18 are satisfied in order for this Court to grant the relief it seeks. First, Puerto 80 has failed to make the requisite showing of

---

[1]    See June 17, 2011 Verified Complaint in United States v. Rojadirecta.org, et al., 11 Civ. 4139 (PAC), Docket No. 1.

"substantial hardship" required by Section 983(f)(1)(C). Puerto 80 cites a potential loss of goodwill, diminution in Internet visitor traffic, and an alleged First Amendment violation as a result of the seizure, but these purported hardships simply do not rise to the level of the extraordinary circumstances contemplated by Congress in its enactment of this exigent relief provision.

Second, Puerto 80 has failed to satisfy the requirements of Section 983(f)(1)(E). In this regard, Puerto 80 has not – because it cannot – assure this Court that the seized domain names will not likely be used to commit additional criminal acts if returned. See 18 U.S.C. § 983(f)(8)(D). To the contrary, returning the Rojadirecta Domain Names at this time would provide Puerto 80 with the very tools it used to commit the crimes the Government has alleged it engaged in prior to the seizure. Accordingly, Puerto 80's petition should be denied.

## FACTS

The facts in support of the forfeiture of the Rojadirecta Domain Names are set forth in the January 31, 2011 affidavit of ICE Special Agent Daniel M. Brazier (the "Brazier Affidavit"), submitted in support of the Government's application for a warrant to seize the Rojadirecta Domain Names. See Declaration of Genevieve Rosloff in Support of Puerto 80's Petition for Release of Seized Property (the "Rosloff Decl."), Ex. E. In summary, prior to February 1, 2011, the Rojadirecta Domain Names directed Internet

users to a website commonly known as "Rojadirecta." Rosloff Decl., Ex. E at ¶ 40a. Rojadirecta was a "linking" website that collected and catalogued links to files on third-party websites that contained illegal copies of copyrighted content, here daily live sporting events and Pay-Per-View events, as well as downloadable sporting events or Pay-Per-View events that had been previously aired. Users simply clicked on a link to begin the process of downloading or streaming to their own computer an illegal broadcast of a sporting event or Pay-Per-View event from the third-party website that hosted the stream. Linking websites are popular because they allow users to quickly browse content and locate illegal streams that would otherwise be more difficult to find through manual searches of the Internet. Id. at ¶ 13.

Rojadirecta's homepage[2] displayed three general categories of links to content that was available for viewing: (1) "Today on Internet TV"; (2) "Download last full matches"; and (3) "Last video highlights." Id. at ¶ 40a. Links for daily sporting events were displayed under the "Today on Internet TV" category header. The links under the "Today on Internet TV" category header changed on a daily basis; links were added as the day progressed and an event's starting time drew closer. The sporting events and

---

[2]    A copy of Rojadirecta's homepage as it appeared on or about January 31, 2011 is attached as Exhibit A to the Declaration of Christopher D. Frey in Support of the Government's Opposition to Puerto 80's Petition for Release of Seized Property ("Frey Decl.").

their starting times corresponded to individual sporting leagues'
official events and starting times.  Id. at ¶ 40b.

When a user selected a link for a particular sporting
event under the "Today on Internet TV" category header, the type of
link, the name of the broadcasting station (e.g., ESPN), the
language option, and the type of Internet media player were
subsequently displayed.  Once a user ·selected a specific link
option, that user was then taken to a new window, which displayed
the selected program and bore a Uniform Resource Locator, or
"URL,"[3] containing the words "rojadirecta."  Because the content
ran on a live stream from another website, the selected show did
not start at the beginning of the program; instead, the program ran
from whatever particular point the show was presently at in the
stream.  Moreover, the event broadcast was shown in real time and
was the same broadcast as the authorized broadcast of that same
event.  However, these broadcasts over Rojadirecta were not
authorized by the relevant copyright holders.  In addition,
advertisements that were separate and distinct from any commercials
that may have been aired during the stream of the sporting event
broadcast were periodically displayed at the bottom of the video
during the live stream.  Id. at ¶¶ 40c, 40d, 42, 44.

--------------------------------

[3]     A URL is code that specifies a particular webpage or
file on the Internet.  If clicked on by a user, a URL can, for
example, bring up the relevant webpage in an Internet browser or
run a program.

## PROCEDURAL HISTORY

On January 31, 2011, Magistrate Judge Frank Maas found that probable cause existed to believe that the Rojadirecta Domain Names were subject to forfeiture because they had been used to commit and facilitate criminal copyright infringement and contained evidence of that crime. Accordingly, that same day, Magistrate Judge Maas issued a warrant authorizing the seizure of the Rojadirecta Domain Names (the "Seizure Warrant"). On or about February 1, 2011, ICE agents executed the Seizure Warrant.

Shortly after the execution of the Seizure Warrant, attorneys for the Government engaged in varied and numerous discussions with counsel for Puerto 80 in an attempt to reach agreement. Those discussions included, among other things, the Government's offer to return the Rojadirecta Domain Names to Puerto 80 under an agreement in which the website would host chat forums and other non-infringing materials under the observation of a firm retained to monitor Puerto 80's compliance. Ultimately, those discussions ended on May 26, 2011, however, because Puerto 80's counsel indicated that it would not agree to remove from the Rojadirecta webpages any content that the Government contends infringes the rights of U.S.-based copyrights owners. See Frey Decl. ¶¶ 2-5.

On June 13, 2011, more than four months after ICE's execution of the Seizure Warrant, Puerto 80 filed the instant

petition.  Pursuant to the procedures set forth in Title 18, United States Code, Section 983(a)(3)(A), the Government had ninety days from the date Puerto 80 filed its Seized Asset Claim Forms (here, March 22, 2011) to file a complaint for forfeiture and thus, on June 17, 2011, the Government filed its Verified Complaint.

## STATUTORY FRAMEWORK

Congress enacted Section 983(f) as part of the Civil Asset Forfeiture Reform Act of 2000, Pub. L. No. 106-185, § 2, 114 Stat. 202, 208-09 (2000), in order to provide a mechanism for the release of property during the pendency of a civil forfeiture proceeding in certain circumstances in which the government's continued possession of the property would pose a substantial hardship to a claimant.  United States v. Undetermined Amount of U.S. Currency, 376 F.3d 260, 263-64 (4th Cir. 2004).  This extreme remedy is granted in the rarest of circumstances.  Accordingly, the statute places a hefty burden on the claimant, and provides, in pertinent part:

> (1)  A claimant . . . is entitled to immediate release of seized property if –
>
> (A) the claimant has a possessory interest in the property;
>
> (B) the claimant has sufficient ties to the community to provide assurance that the property will be available at the time of trial;
>
> (C) the continued possession by the Government pending the final disposition of forfeiture proceedings will cause substantial

hardship to the claimant, such as preventing the functioning of a business, preventing an individual from working, or leaving an individual homeless;

(D) the claimant's likely hardship from the continued possession by the Government of the seized property outweighs the risk that the property will be destroyed, damaged, lost, concealed, or transferred if it is returned to the claimant during the pendency of the proceeding; and

(E) none of the conditions set forth in paragraph (8) applies.

(2)   A claimant seeking release of property under this subsection must request possession of the property from the appropriate official, and the request must set forth the basis on which the requirements of paragraph (1) are met.

(3)   (A) If not later than 15 days after the date of a request under paragraph (2) the property has not been released, the claimant may file a petition in the district court in which the complaint has been filed . . .

(B) The petition described in subparagraph (A) shall set forth –

(i) the basis on which the requirements of paragraph (1) are met; and

(ii) the steps the claimant has taken to secure release of the property from the appropriate official.

.  .  .

(6) If –

(A) a petition is filed under paragraph (3); and

8

(B) the claimant demonstrates that the requirements of paragraph (1) have been met, the district court shall order that the property be returned to the claimant, pending completion of proceedings by the Government to obtain forfeiture of the property.

. . .

(8) This subsection shall not apply if the seized property –

(A) is contraband, currency or other monetary instrument, or electronic funds unless such currency or other monetary instrument or electronic funds constitutes the assets of a legitimate business which has been seized;

(B) is to be used as evidence of a violation of the law;

(C) by reason of design or other characteristic, is particularly suited for use in illegal activities; or

(D) is likely to be used to commit additional criminal acts if returned to the claimant.

18 U.S.C. § 983(f).

As reflected by the examples of "substantial hardship" explicitly articulated in subsection (1)(C), the nature of the difficulty encountered by a claimant must "go beyond mere inconvenience . . . ." In re Petition of Moran, No. 99-cv-248-MMA (CAB), 2009 WL 650281, at *3 (S.D. Cal. Mar. 10, 2009). Indeed, the statutory text makes clear that Congress intended this hardship provision to apply only in "the most urgent situations." Kaloti Wholesale, Inc., v. United States, 525 F. Supp. 2d 1067, 1070 (E.D.

Wisc. 2007) (citing <u>Matter of Sinclair</u>, 870 F.2d 1340, 1343 (7th Cir. 1989)).   Thus, while Section 983(f) offers a claimant a "detailed and comprehensive mechanism" for obtaining the release of property subject to civil forfeiture, it "strictly limits the situation in which such relief is available."   <u>United States</u> v. <u>Contents of Accounts</u>, Nos. 10-5799 and 10-5800, 2011 WL 9167, at *5 (6th Cir. Jan. 4, 2011).

<u>STANDARD OF REVIEW</u>

In order to obtain the release of property under Section 983(f), a claimant bears the burden of demonstrating that the statutory prerequisites are satisfied.   <u>Contents of Accounts</u>, 2011 WL 9167, at *5; <u>Undetermined Amount of U.S. Currency</u>, 376 F.3d at 264 (citing Section 983(f)(6)); <u>United States</u> v. <u>Huntington National Bank</u>, No. 2:07-cv-0080, 2007 WL 2713832, at *1 (S.D. Ohio Sept. 14, 2007) (same).

<u>ARGUMENT</u>

I.   **THE PETITION OF PUERTO 80 MUST BE DENIED BECAUSE IT HAS NOT SATISFIED ITS BURDEN OF DEMONSTRATING THAT THE REQUISITE FACTORS UNDER SECTION 983(f) ARE MET**

As discussed in further detail below, Puerto 80 simply has not satisfied its burden of demonstrating that the requisite factors of Section 983(f)(1) are satisfied.   Its petition for the immediate release of the Rojadirecta Domain Names should therefore be denied.

10

A.   <u>Puerto 80 Has Failed To Demonstrate "Substantial Hardship" As Required By Section 983(f)</u>

After waiting more than four months from the date of the Government's seizure of the Rojadirecta Domain Names to file a petition with this Court, the sole alleged hardships that Puerto 80 has articulated in support of its petition are (1) a purported decrease in the total number of visits to the Rojadirecta website and an associated loss of goodwill from Internet users accessing that site; and (2) that the seizure constitutes an invalid prior restraint, thereby infringing upon its users' First Amendment rights. <u>See</u> Memo at 9-12. Puerto 80's alleged harms, however, do not rise to the level of "substantial hardship" that Congress contemplated in authorizing a court to order the immediate release of seized property under Section 983(f). As such, Puerto 80's petition is without merit and should be denied.

. As Puerto 80 itself acknowledges, shortly after the seizure of the Rojadirecta Domain Names, Puerto 80 transferred its website to other domain names – specifically, rojadirecta.es, rojadirecta.me, and rojadirecta.in. <u>See</u> Memo at 10 n.5. Thus, the Rojadirecta website itself remains available to Internet users to this very day. In fact, by typing "Rojadirecta" in any one of the many search engines available on the Internet, such as Google, a user is directed to the Rojadirecta website via one of those newly

established domain names and/or the underlying IP address[4] itself.
Puerto 80 maintains that the Rojadirecta website has nevertheless
experienced a 32% reduction in traffic in terms of visits to that
site.  See Declaration of Igor Seoane Minan in Support of Puerto
80's Petition for Release of Seized Property ("Seoane Decl.") ¶11.
However, nowhere in its petition does Puerto 80 assert that it is
incurring a financial loss as a result of the Government's seizure
of the Rojadirecta Domain Names, nor has it provided this Court
with any evidence of any such loss.  To the contrary, Puerto 80
seemingly contends that it does not receive any revenue from
specific content hosted on its website, Seoane Decl. ¶ 10, and that
no profit is generated directly from advertisements that are
displayed during the streaming of the live sporting events.  Id. ¶
5.  Thus, it is wholly unclear from its petition what Puerto 80's
business model is or how it generates profit of any kind.

In crafting the text of Section 983(f), Congress
explicitly mandated that a claimant is entitled to the immediate
release of seized property only in the most urgent of situations,
including, among others, those that make it impossible to run the

---

        [4]    Internet Protocol Addresses or IP addresses are unique
machine-readable numeric address that computers use to identify
each other on the Internet.  An IP address looks like a series of
four numbers, each in the range of 0-255, separated by periods
(e.g., 121.56.97.178).  Every computer connection to the Internet
must be assigned an IP address so that Internet traffic sent from
and directed to that computer is directed properly from its
source to its destination.

impacted business.  18 U.S.C. § 983(f)(1)(C) (requiring petitioner to demonstrate that ". . . the continued possession by the Government will cause substantial hardship to the claimant, <u>such as preventing the functioning of a business</u> . . . .") (emphasis added); <u>United States</u> v. <u>$6,787 in U.S. Currency</u>, No. 1:06-cv-1209 WSD, 2007 WL 496767, at *2 (N.D. Ga. Feb. 13, 2007) (holding that while absence of a vehicle may decrease petitioner's profit margin, such loss does not amount to substantial hardship because it does not prevent functioning of business).

The legislative history of the Civil Asset Forfeiture Reform Act underscores Congress's intent to severely limit the situations in which such immediate relief would be available.  In recommending its passage, the House Judiciary Committee laid out several examples of situations, not unlike the ones contained in the actual text of Section 983(f)(1)(C), in which irreparable damage may be done to a property owner's interests even if the owner ultimately prevails in a civil forfeiture proceeding and, as such, constitute a showing of hardship that may justify a return of property before final judicial disposition of forfeiture proceedings.  First, a claim of substantial hardship may be shown if the property seized is "used in a business," wherein "its lack of availability for the time necessary to win a victory in court could have forced its owner into bankruptcy."  H.R. Rep. No. 106-192, at 17 (1999).  Second, "if the property is a car, the owner

13

might not have been able to commute to work until it was won back."
Id. Finally, "if the property is a house, the owner may have been
left temporarily homeless (unless the government let the owner rent
the house back)." Id. The Judiciary Committee's fear in such
instances was that, despite a weak government case, the property
owner would "settle with the government and lose a certain amount
of money in order to get the property back as quickly as possible."
Furthermore, Congress did not want "individuals' lives and
livelihoods . . . [to] be in peril during the course of a legal
challenge to a seizure. 145 Cong. Rec. H4854-02 (daily ed. June
24, 1999) (statement of Rep. Hyde), at *WL 419756.

Puerto 80's claims of purported hardship do not remotely
approach the concerns expressed by Congress in enacting Section
983(f). The bottom line is that the Rojadirecta website remains
fully operational (and to the financial detriment of U.S. copyright
holders, it is continuing to provide users with highly sought out
links to infringing content). At best, Puerto 80 can say only that
it has experienced a modest decrease in visits to its website.
However, nothing in the legislative history suggests that Congress
was concerned with a decrease in the traffic of visitors to a
particular website or a loss of goodwill in contemplating hardship.
Nor is there anything in the legislative history that indicates
Congress was concerned that registered users of a website might
choose instead to use the website of a competitor, an action that

14

customers are free to take at any time, regardless of the Government's seizure of a domain name. Moreover, given the passage of more than five months from the Government's seizure, a return of the Rojadirecta Domain Names is unlikely to matter to the overall traffic the website receives. This is particularly true where, as here, there is simply no evidence to conclude that the modest 32% reduction in traffic is directly attributable to the Government's possession of the Rojadirecta Domain Names and not some other factor, such as the likelihood that Internet users have been deterred from accessing websites that host illegal, pirated content as a result of media reports of increased law enforcement activity.

Similarly, Puerto 80's contention that the Government's seizure constitutes an invalid prior restraint, thereby infringing upon its users' First Amendment rights, also fails to satisfy the "substantial hardship" requirement of Section 983(f). In no way is this purported harm properly viewed as a hardship borne by Puerto 80, and its attempts to cast the issue as such borders on frivolous not only given that its discussion forums remain on the Rojadirecta website today, which is accessible through other domain names,[5] but also in light of the repeated offers the Government has made to

---

[5]     Indeed, it is clear from the record before this Court that the Government's seizure of the Rojadirecta Domain Names was prompted by enforcement of the criminal copyright laws, and not as regulation of speech or other expressive conduct. As such, the seizure is not properly viewed as a prior restraint. See, e.g., Arcara v. Cloud Books, Inc., 478 U.S. 697, 706 n.2 (1986).

Puerto 80 to return the Rojadirecta Domain Names subject to certain conditions. Frey Decl. ¶¶ 2-5.   To the extent Puerto 80 seeks to challenge the constitutionality of such a seizure on First Amendment grounds, a petition brought pursuant to Section 983(f) is not the proper vehicle for asserting such a claim.   Indeed, the arguments Puerto 80 seeks to advance in this regard would seemingly be included in a motion to dismiss the Government's Verified Complaint or, even more appropriately, following a period of fact discovery.[6]

Accordingly, Puerto 80 has wholly failed to demonstrate that the Government's seizure of the Rojadirecta Domain Names has resulted in any substantial hardship.

B.   <u>The Petition Should Be Denied Because Returning</u>
<u>The Seized Property Would Afford Puerto 80 The Ability</u>
<u>To Commit Additional Criminal Acts</u>

Pursuant to subsection 983(f)(1)(E), the immediate return of property is not warranted if the seized property, among other things, "is likely to be used to commit additional criminal acts if returned to the claimant." 18 U.S.C. § 983(f)(8).   The Rojadirecta Domain Names were seized pursuant to a warrant obtained in the Southern District of New York and issued by the Honorable Frank Maas, United States Magistrate Judge, who found probable cause to

---

[6]     In the event the Court deems it appropriate to consider the First Amendment issues at this time, the Government respectfully requests that it be granted leave to submit additional briefing on that topic.

believe that Puerto 80, through the Rojadirecta Domain Names, was engaged in criminal copyright infringement.  The Government has no reason to believe that Puerto 80 would not continue to engage in the very illegal acts in which it engaged prior to the seizure, were those domain names to be returned to Puerto 80 at this time.

1.   Puerto 80 Engaged in Criminal Copyright Infringement Prior to the Government's Seizure of the Rojadirecta Domain Names

As discussed in detail below, in operating the Rojadirecta website, Puerto 80 has engaged in (and aided and abetted) flagrant criminal copyright infringement.  Title 18, United States Code, Section 2319 sets forth certain criminal penalties associated with the criminal infringement of a valid copyright, in violation of Title 17, United States Code, Section 506(a).  In order to establish criminal infringement of a copyrighted work, the Government must establish each of the following elements: (1) the existence of a valid copyright; (2) an act of infringement of that copyright; (3) willfulness on the part of the infringer; and (4) either that (a) the infringement was for purposes of commercial advantage or private financial gain, or (b) the infringer reproduced or distributed, during any 180-day period, one or more copies or phonorecords of one or more copyrighted works, with a total retail value of more than $1,000.  17 U.S.C. § 506(a).  As presented in its application to Magistrate Judge Maas for the Seizure Warrant, the Government believes that Puerto 80,

17

through the Rojadirecta Domain Names, has engaged in criminal copyright infringement.

### a.   The Existence of a Valid Copyright

As set forth in the Brazier Affidavit, the owner of the copyrights to all television broadcasts and other footage of a particular sporting event is the associated individual sports league, such as the National Football League (the "NFL"), the National Basketball Association (the "NBA"), the National Hockey League (the "NHL"), World Wrestling Entertainment (the "WWE") and Ultimate Fighting Championship (the "UFC") (collectively, the "Leagues"). Rosloff Decl., Ex. E at ¶ 8. The U.S. Copyright Act, Title 17, United States Code, Sections 101, et seq., gives the owner of such copyrights exclusive rights, including the right to reproduce the copyrighted work, the right to prepare derivative works, the right to distribute copies to the public, and the right to publicly display the work. 17 U.S.C. §§ 106(1)-(3) & (5). As such, the Leagues hold a valid copyright to the broadcast of their respective sporting events.

### b.   Infringing Acts

Infringement consists of the unauthorized exercise of one of the exclusive rights of the copyright holder. Despite its claims that it is "essentially an online discussion group that hosts 'forums' in which users can post messages concerning sports, politics, and other topics," (Memo at 2), the Rojadirecta website's

principal purpose appears to be to organize links to broadcasts available on the Internet of various copyright-protected sporting events.   Indeed, to the extent Puerto 80 has any significant traffic to the Rojadirecta website at all, the Government contends (as it alleges in its Verified Complaint) that is because Puerto 80 organizes popular, infringing content available on the Internet in a way that is useful to those who seek such material.   In making available these streams of live and pre-recorded broadcasts of sporting events on the Rojadirecta website without the permission of the Leagues which own the associated copyrights, Puerto 80 has engaged in repeated acts of infringement with severe consequences. The Leagues suffer significant negative impact from unauthorized streaming of live programming.   Online piracy of live sporting event telecasts threatens the investment that broadcasters and digital media companies are willing to make to distribute live content, the Leagues' ability to sell game tickets and secure local television and radio carriage, and the value of advertising revenue generated by broadcast, radio and new media partners, among other things.   Rosloff Decl., Ex. E at ¶ 9.

Moreover, Puerto 80's attempts to liken itself to an Internet search engine is wholly unavailing.   Unlike a search engine or other site that aggregates links to existing <u>content neutral</u> material on the Internet, Rojadirecta organizes links to very <u>specific</u> content in a precise and targeted way.   As such, the

19

cases Puerto 80 cites for the proposition that the act of indexing and linking to copyrighted material is not direct or indirect copyright infringement are wholly inapposite. See, e.g., Field v. Google, Inc., 412 F. Supp. 2d 1106 (D. Nev. 2006) (holding that the automated, non-volitional conduct by Google in response to an Internet user's search terms does not constitute direct infringement under the Copyright Act).

As described above and as set forth in the Brazier Affidavit, Rojadirecta's homepage displayed three general categories of links to content available for viewing: (1) "Today on Internet TV"; (2) "Download last full matches"; and (3) "Last video highlights." Rosloff Decl., Ex. E at ¶ 40a. Links for daily sporting events were displayed under the "Today on Internet TV" category header. The links under the "Today on Internet TV" category header changed on a daily basis. The links for sporting events were added as the day progressed and an event's starting time drew closer. The sporting events and their starting times corresponded to individual sporting leagues' official events and starting times. Users simply clicked on a link to begin the process of downloading or streaming to their own computer an illegal broadcast of a sporting event or Pay-Per-View event from the third-party website that hosted the stream. Id. at ¶ 40b. Under this set of facts, even if Puerto 80 has not engaged in direct copyright infringement through the Rojadirecta website, it

certainly has engaged in contributory infringement, and has aided and abetted the infringement by others. "Traditionally, 'one who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another, may be held liable as a 'contributory' infringer." A&M Records, Inc. v. Napster, Inc., 239 F.3d 1004, 1019 (9th Cir. 2001) (citing Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc., 443 F.2d 1159, 1162 (2d Cir. 1971)). In linking to this content, Puerto 80's failure to "stop an infringing copy from being distributed worldwide constitutes substantial participation" in distribution of copyrighted material. Cubby, Inc. v. CompuServe, Inc., 776 F. Supp. 135, 141 (S.D.N.Y. 1991). Through the Rojadirecta website, Puerto 80 materially contributes to infringing activity, for without the support services it provides, users could not easily find and stream the sporting events they seek. See A&M Records, Inc., 239 F.3d at 1022 (upholding the district court's determination that Napster provided the site and facilities for direct infringement because "[w]ithout the support services [it] provides, Napster users could not find and download the music they want with the ease of which defendant boasts"). And, as courts have recognized, "[u]nauthorized posting may also be reviewed as facilitating unauthorized downloading or copying by a third party and as such is also a violation of the exclusive right of

reproduction under the copyright laws." <u>Ohio</u> v. <u>Perry</u>, 697 N.E.2d 624, 628 (Ohio 1998).

Thus, Puerto 80 has repeatedly engaged in acts that infringe the valid copyrights owned by the Leagues through the use of the Rojadirecta Domain Names.

c.   <u>Willfulness</u>

Although the Second Circuit held in 1943 that willful intent in the criminal copyright context need only be shown as to the intent to copy the works, and not as to the intent to infringe the copyright, <u>see United States</u> v. <u>Backer</u>, 134 F.2d 533, 535 (2d Cir. 1943), recent decisions of the Second Circuit in civil cases[7] have made clear that "[t]he standard is simply whether the defendant had knowledge that its conduct represented infringement or perhaps recklessly disregarded the possibility." <u>Twin Peaks Prods., Inc.</u> v. <u>Publ'ns Int'l, Ltd.</u>, 996 F.2d 1366, 1382 (2d Cir. 1993).

Over the course of several years, the Leagues have sent so-called take down notices to the owner and operator of the Rojadirecta website, advising that the website was infringing their valid copyrights. Frey Decl. ¶ 7, Ex. B. Despite these, numerous communications, putting it on notice of its illegal actions, Puerto 80 persisted in its conduct. Moreover, various courts throughout

---

[7]    "There is a general principle in copyright law of looking to civil authority for guidance in criminal cases." <u>United States</u> v. <u>Moran</u>, 757 F. Supp. 1046, 1050 (D. Neb. 1991).

the country have held such explicit forms of notice to be sufficient evidence to support a finding that the defendant knew its conduct represented infringement or at least recklessly disregarded that possibility. See, e.g., Getaped.com, Inc. v. Cangemi, 188 F. Supp. 2d 398, 402-03 (S.D.N.Y. 2002) (holding that evidence that plaintiff's website had a prominent copyright notice supported a finding that defendants' acted in reckless disregard of plaintiff's rights); Castle Rock Entertainment v. Carol Pub. Group, Inc., 955 F. Supp. 260, 267 (S.D.N.Y. 1997) (holding that fact that plaintiff's copyrighted works had copyright notices weighed in determining willfulness of defendant's infringement).  In light of the plethora of communications sent by the Leagues to the owner of the Rojadirecta Domain Names, Puerto 80's claim that it was not aware that its conduct was tantamount to copyright infringement rings hollow.

Nor is Puerto 80's attempt to rely upon the so-called validation of its activity by Spanish courts, applying Spanish law, persuasive.  Puerto 80, with two domain names registered in the United States, certainly should have been aware that the website reached via those domain names was subject to the application of American copyright law.  This is the case despite the fact that the United States is a signatory to the Berne Convention for the Protection of Literary and Artistic Works, as the Convention "is not self-executing under the Constitution and the laws of the

23

United States" and the Convention does not pre-empt the scope of American copyright law. See, e.g., Baby Moose Drawings, Inc. v. Valentine, No. 2:11-CV-00697-JHN-JCGx, 2011 WL 1258529, at *4 (N.D. Cal. Apr. 1, 2011) (citing Berne Convention Implementation Act of 1988, H.R. 4262, 100th Cong. § 2 (1988) and 17 U.S.C. § 301(e)). The evidence is thus clear that Puerto 80 engaged in willful behavior.

> d.   Financial Gain

Puerto 80 argues that it does not receive any revenue derived from specific content hosted on, or streamed by, the websites to which it links, and to the extent there is any site to which Rojadirecta links that contains infringing material, Puerto 80 receives no specific financial benefit from a user clicking through to that site and viewing such content. See Memo at 16. Puerto 80's argument, however, evidences a misunderstanding of what is required to establish the requisite element of financial gain.

As an initial matter, Title 17, United States Code, Section 506(a) "does not require that a defendant actually realize a commercial advantage or private financial gain.  It is only necessary that the activity be for the purpose of financial gain or benefit."  United States v. Cross, 816 F.2d 297, 301 (7th Cir. 1987) (citing United States v. Moore, 604 F.2d 1228, 1235 (9th Cir. 1979)).  Moreover, courts have held that "[f]inancial benefit exists where the availability of infringing material 'acts as a

"draw" for customers.'" A&M Records, Inc. v. Napster, Inc., 239 F.3d 1004, 1023 (9th Cir. 2001) (citing Fonovisa, Inc. v. Cherry Auction, Inc., 76 F.3d 259, 263-64 (9th Cir. 1996)).   It appears that Puerto 80's revenue and profitability are directly dependent upon increases in user base and enhanced Internet traffic to the website.   Thus, even if Puerto 80 does not directly profit by receiving payment from the sites to which it links that stream the content, in at least some sense, Puerto 80 apparently benefits financially from making available copyright protected works on the Rojadirecta website.

In addition, despite its assertion that it does not receive revenue from the advertisements that run in connection with the streaming of copyrighted sporting events on the Rojadirecta webpages, (see Seoane Decl. ¶ 5), the Government's investigation has revealed that the CEO of Puerto 80, the owner of the Rojadirecta Domain Names, has in fact received thousands of dollars since at least October 2005 from Google AdSense, a free program that allows website publishers to earn revenue by displaying advertisements that are likely to be relevant and of interest to users of those websites.   Frey Decl. ¶ 8, Ex. C.   Thus, at a minimum, there exists considerable question as to how Puerto 80 profits and to what extent it enjoys financial gain from its operation of the Rojadirecta website.

## CONCLUSION

For the reasons discussed above, and particularly in light of the numerous disputed factual issues on the existing record before the Court, the Government respectfully submits that the petition of Puerto 80 for the immediate release of seized property pursuant to Title 18, United States Code, Section 983(f), should be denied.  Indeed, the Government respectfully submits that the majority of the issues raised in Puerto 80's petition are more aptly raised in connection with the parties' litigation, via fact discovery and motions to dismiss and/or for summary judgment, of the allegations set forth in the Government's Verified Complaint in United States v. Rojadirecta.org, et al., 11 Civ. 4139 (PAC), Docket No. 1.

Dated:    New York, New York
          July 11, 2011

                         Respectfully submitted,

                         PREET BHARARA
                         United States Attorney for
                         the Southern District of New York,
                         Attorney for the United States
                         of America


                  By: _____
                         Christopher D. Frey
                         David I. Miller
                         Assistant United States Attorneys
                         (212) 637-2270/2484

26