**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

PUERTO 80 PROJECTS, S.L.U.,

                  Plaintiff,

    v.

United States of America and
Department of Homeland Security,
Immigration and Customs Enforcement,

                  Defendants.

Civil Action No. 11-cv-3983 (PAC)
(FM)

**PUERTO 80'S REPLY BRIEF IN SUPPORT OF PETITION FOR RELEASE OF
SEIZED PROPERTY AND IN SUPPORT OF REQUEST FOR EXPEDITED BRIEFING
AND HEARING OF SAME**

## **Table of Contents**

I.  INTRODUCTION ....................................................................................................1

II.  ARGUMENT .........................................................................................................2

    A.  The Government Does Not Dispute That the Seized Domain Names Will
        be Available At Trial. ..................................................................................2

    B.  The Government's Challenge to the "Substnatial Hardship" Factor Fails
        To Justify Denial Of Puerto 80's Petition..................................................3

    C.  The Domain Names Were Not Used to Commit Criminal Acts, Nor Will
        They Be Used to Commit Criminal Acts if Returned...................................5

        1.  Puerto 80 is not directly infringing any work, nor does the
            government argue that it is...........................................................6

        2.  Puerto 80 is not liable for contributory infringement, but even if it
            were, there is no criminal liability for contributory infringement. .............7

        3.  The government has not charged Puerto 80 with aiding and
            abetting, and even if it did, those crimes would not support the
            seizure. ......................................................................................9

        4.  The government cannot show Wilfullness..................................9

III.  CONCLUSION....................................................................................................10

## <u>Table of Authorities</u>

<u>Cases</u>

*Arista Records, Inc. v. MP3Board, Inc.*,
  2002 WL 1997918 (S.D.N.Y. Aug. 29, 2002) .......................................................... 7

*Bantam Books v. Sullivan*,
  372 U.S. 58 (1963) ................................................................................................... 4

*Bernstein v. JC Penney, Inc.*,
  1998 WL 906644 (C.D.Cal. Sept. 29, 1998) .......................................................... 7

*Bolger v. Youngs Drug Products Corp.*,
  463 U.S. 60 (1983) ................................................................................................... 5

*CoStar Grp., Inc. v. LoopNet, Inc.*,
  373 F.3d 544 (4th Cir. 2004) ................................................................................... 7

*Cubby, Inc. v. CompuServe, Inc.*,
  776 F. Supp. 135 (S.D.N.Y. 1991) .......................................................................... 8

*Demetriades v. Kaufmann*,
  690 F. Supp. 289 (S.D.N.Y. 1988) .......................................................................... 8

*Dowling v. United States*,
  473 U.S. 207 (1985) ................................................................................................. 8

*G. & A. Books, Inc. v. Stern*,
  604 F. Supp. 898 (S.D.N.Y. 1985) .......................................................................... 4

*In re Aimster Copyright Litigation*,
  334 F.3d 643 (7th Cir. 2003) ................................................................................... 9

*Interstate Circuit, v. City of Dallas*,
  390 U.S. 676 (1968) ................................................................................................. 4

*Liparota v. United States*,
  471 U.S. 419 (1985) ................................................................................................. 8

*N.A.A.C.P. v. City of Richmond*,
  743 F.2d 1346 (9th Cir. 1984) ................................................................................. 4

*Ohio v. Perry*,
  697 N.E.2d 624 (Ohio 1998) .................................................................................... 6

*Omega S.A. v. Costco Wholesale Corp.*,
  541 F.3d 982 (9th Cir. 2008) ................................................................................. 10

*Online Policy Group v. Diebold, Inc.*,
  337 F.Supp.2d 1195 (N.D. Cal. 2004) .................................................................... 7

*Perfect 10, Inc. v. Visa Int'l. Svc. Ass'n*,
  494 F.3d 788 (9th Cir. 2007) ................................................................................... 8

*Perial Amusement Corp. v. Morse*,
  482 F.2d 515 (2d Cir. 1973) .................................................................................... 4

*Religious Tech'y Ctr. v. Netcom On-Line Communication Svcs  Inc.*,
    907 F. Supp. 1361 (N.D. Cal. 1995) ................................................................ 8

*Rosetta Stone Ltd. v. Google, Inc.*,
    730 F. Supp. 2d 531 (E.D. Va. 2010) .............................................................. 7

*Schneider v. State of New Jersey*,
    308 U.S. 147, 163 (1939) ................................................................................ 4

*Screws v. U.S.*,
    325 U.S. 91 (1945) .......................................................................................... 9

*Sony Corp. v. Universal City Studios*,
    464 U.S. 417 (1984) ........................................................................................ 8

*Staub v. City of Baxley*,
    355 U.S. 313 (1958) ........................................................................................ 5

*Subafilms, Ltd. v. MGM-Pathe Communications Co.*,
    24 F.3d 1088 (9th Cir. 1994) ........................................................................ 10

*Ticketmaster Corp., v. Tickets.com Inc.*,
    2000 WL 525390 (C.D. Cal. 2000) ................................................................ 7

*U.S. v. 8 Gilcrease Ln., Quincy Fla. 32351*,
    587 F.Supp.2d 133 (D.D.C. 2008) .................................................................. 3

*U.S. v. Backer*,
    134 F.2d 533 (2d Cir. 1943) .......................................................................... 10

*U.S. v. Contents of Account No. 4000393243*,
    2010 WL 3398142 (S.D. Ohio Jan. 2, 2010) .................................................. 3

*U.S. v. Lanier*,
    520 U.S. 259 (1997) ..................................................................................... 8, 9

*U.S. v. Larracuente*,
    952 F.2d 672 (2nd Cir. 1992) .......................................................................... 6

*U.S. v. Undetermined Amount of U.S. Currency*,
    376 F.3d 260 (4th Cir. 2004) .......................................................................... 3

*United States v. Acevedo-Cruz*,
    2006 WL 448680 (D.P.R. Feb. 23, 2006) ........................................................ 9

*United States v. Heilman*,
    614 F.2d 1133 (7th Cir. 1980) ................................................................... 9, 10

*United States v. Moran*,
    757 F. Supp. 1046 (D. Neb. 1991) .................................................................. 9

*United States v. Wise*,
    550 F.2d 1180 (9th Cir. 1977) ................................................................... 9, 10

**<u>Statutes</u>**

18 U.S.C. §§ 2323 ................................................................................................. 9

18 U.S.C. §§ 983(f) .................................................................................... *passim*

**<u>Other Authorities</u>**

House Report, Copyright Felony Act,
   H.R. Rep. No. 997, 102nd Cong., 2d Sess. 1992, 1992 U.S.C.C.A.N. 3569,
   3573 P.L. 102-997 ......................................................................................... 10

## I.      INTRODUCTION

Puerto 80 seeks to have its seized property returned temporarily, pending a final determination of the government's case.  The government's opposition pitches Puerto 80's requested relief as "rare" but in fact, it is the government's use of the forfeiture process in this case that is unprecedented and unjustified.  Indeed, the government's seizure of Puerto 80's domain names does not represent a routine tool of law enforcement; rather, it is an "innovative use of forfeiture authority"[1] that rests on shaky legal ground.  Perhaps that is why Congress has made repeated attempts to pass legislation—none of which has been enacted to date—that would give the Department of Justice the authority to do what it is attempting to do here.  *See* Supp. Rosloff Decl., Exhs. 1 and 2.  Not only does the government lack a legal basis for the seizure, but its opposition fails to rebut Puerto 80's showing that it is entitled to the temporary return of its domain names pursuant to 18 U.S.C. § 983(f).

The government's opposition rests upon a challenge to the "substantial hardship" prong of the multi-factor test set forth in section 983(f) and its contention that criminal acts will occur if the domain names are temporarily returned.  *See* 18 U.S.C. §§ 983(f)(1)(C) and (f)(8)(D).  The government, however, does not contest any of the other 983(f) factors:  it essentially concedes that Puerto 80 has a possessory interest in the seized property, that the property will be available at the time of trial, and that there is no risk that the domain names will be destroyed, damaged, lost, concealed or transferred if they are returned to Puerto 80 during the pendency of this proceeding.  *See* 18 U.S.C.§ 983(f)(1)(A), (B), (D).  This concession, coupled with the government's derisory attempt to minimize the very real hardship suffered by Puerto 80's business since the seizure, and its complete failure to address the suppression of Puerto 80's and its users' First Amendment rights, is fatal to the government's opposition.

Nor has the government shown that returning the property will afford Puerto 80 the ability to commit criminal acts, because the government hasn't alleged that Puerto 80 has engaged in any activity to which criminal liability can attach.  Instead, it hints that Puerto 80's alleged contributory infringement may render it liable under a theory of conspiracy or aiding and

---

[1] Senate Report, Combating Online Infringement and Counterfeits Act at 5 fn. 23, attached as Exhibit 1 to the Supplemental Declaration of Genevieve Rosloff ("Rosloff Decl.").

abetting.  But there are two fundamental problems with the government's position.  First, the domain names were not seized pursuant to charges of aiding and abetting or conspiracy, and the government did not allege those crimes in its forfeiture complaint.  *See* Decl. of Genevieve Rosloff in Support of Puerto 80's Petition for Release of Seized Property, Exh. E (affidavit of ICE Agent Daniel M. Brazier); *United States v Rojadirecta.org et. al.*, Civ. No. 1:11-3149 (PAC) (S.D.N.Y., filed June 17, 2011), Dkt. No. 1.  Second, even if it had, those crimes would not support forfeiture under the statute under which the domain names were seized.

Despite the absence of any risk that the property will be unavailable at trial and despite the government's inability to plead criminal liability, the government nonetheless opposes Puerto 80's petition, asserting that "real questions of fact exist concerning, among other things, what exactly Puerto 80's website is and how Puerto 80 profits by operating it."  Gov'ts Mem. of Law in Opp'n to Petition of Puerto 80 Projects, S.L.U. ("Opp'n") at 2.  The government misses the point.  The inquiry under section 983(f) does not require Puerto 80 to explain its business model; rather, it asks whether risk that the domain names will be unavailable at trial outweighs the hardship borne by Puerto 80, and whether it is "likely" that the domain names will be used to commit additional crimes.  The answer to both questions is no.

Puerto 80 respectfully requests that the Court set a hearing on this Petition at the earliest date convenient for the Court's calendar, as the statutory period by which the Court must issue its ruling—30 days unless otherwise agreed upon by the parties or "for good cause shown"—has already expired. [2]  18 U.S.C. § 983(f)(5).

## II.   ARGUMENT

### A.   The Government Does Not Dispute That the Seized Domain Names Will be Available At Trial

The factors enumerated in section 983(f) are to be viewed as a whole, and the hardship incurred by the claimant to be weighed against the risk of loss of the property.  *See United States*

---

[2] For the government to suggest that there is no urgency given that Puerto 80 did not file its petition until recently is misleading, given that Puerto 80 was negotiating in good faith with the government in the months preceding its filing, and especially given that it took Puerto 80 nearly a month to even be put in contact with the appropriate officials at the Department of Justice. *See* Decls. of Genevieve Rosloff and Ragesh Tangri in Support of Puerto 80's Petition for the Release of Seized Property.

*v. Undetermined Amount of U.S. Currency*, 376 F.3d 260, 265 (4th Cir. 2004); *United States v. 8 Gilcrease Ln., Quincy Fla. 32351*, 587 F. Supp. 2d 133, 140 (D.D.C. 2008).   Section "983(f) places great emphasis on ensuring the preservation of any released property pending final disposition of forfeiture proceedings."  *Undetermined Amount of U.S. Currency*, 376 F.3d at 265.

   Puerto 80 easily satisfies this balancing test because the government does not dispute that there is absolutely no risk that the seized domain names will be unavailable if returned to Puerto 80 pending the outcome of the forfeiture proceedings.[3]  Indeed, the government does not dispute that the business hardships Puerto 80 claims are not real; it simply argues that they are not "substantial." Opp'n at 11-18.  But given that there is no risk that the domain names will be destroyed or unavailable for trial, the hardship that Puerto 80 has shown outweighs that non-existent risk.  Furthermore, given the dubious nature of the government's use of the forfeiture statute, and the fact that the underlying charges rest on a novel (and legally questionable) theory of copyright liability, the seizure of the domains is disproportionate to the crime alleged.  *See, e.g.*, *U.S. v. Contents of Account No. 4000393243*, 2010 WL 3398142, *1 fn. 1 (S.D. Ohio Jan. 2, 2010) ("Proportionality may well be a relevant consideration under § 983(f), perhaps as part of the balancing test of § 983(f)(1)(D)…").

   **B.     The Government's Challenge to the "Substantial Hardship" Factor Fails To Justify Denial Of Puerto 80's Petition**

   Despite having been well aware of Puerto 80's First Amendment argument since February, when Puerto 80 first provided the government a draft of its petition, having the benefit of the Electronic Frontier Foundation's *amicus* brief on the issue (*see* Dkt. No. 11), and having been granted an extension of time to respond to Puerto 80's petition, the government devotes a scant one paragraph of its opposition brief to addressing the First Amendment deprivation at stake.  Given (1) that the government has had more than ample opportunity to respond to this argument; (2) that the government has already delayed resolution of Puerto 80's petition; (3) the ongoing nature of the government's violation of Puerto 80 and its users' First Amendment rights; (4) the temporary nature of the relief requested; and, perhaps more importantly (5) the absence of

---

[3] Nor has the government disputed that Puerto 80 has a "possessory interest" in the domains.

risk that the seized property will not be available at trial, Puerto 80 respectfully requests that the government's request for additional briefing on this issue be denied.

The government contends that now is not the appropriate time to consider whether its actions constitute a prior restraint on speech, arguing that the issue would more appropriately be considered on a motion to dismiss or later.  The government has it backwards.  The purpose of the presumption against prior restraints is to prevent the suppression of speech until the restraint can be evaluated on the merits at trial.  *See, e.g., Perial Amusement Corp. v. Morse*, 482 F.2d 515, 525 (2nd Cir. 1973) ("Pending trial, which should be expedited by the district court, we emphasize that the court should scrupulously seek to limit the restraint on the film to the extent that it can do so consistently with preservation of the print for evidentiary purposes.").

The government does not dispute that suppression of First Amendment rights is a "substantial hardship."[4]  Instead, it argues that the hardship is not one borne by Puerto 80 because Rojadirecta's discussion forums remain available via Puerto 80's other domain names. Opp'n at 15.  This argument is a red herring.  "[L]aws regulating public fora cannot be held constitutional simply because they leave potential speakers alternative fora for communicating their views."  *N.A.A.C.P. v. City of Richmond*, 743 F.2d 1346, 1355 (9th Cir. 1984).  *See also Schneider v. State of New Jersey*, 308 U.S. 147, 163 (1939) ("[O]ne is not to have the exercise of his liberty of expression in appropriate places abridged on the plea that it may be exercised in some other place."); *G. & A. Books, Inc. v. Stern*, 604 F. Supp. 898, 912 (S.D.N.Y. 1985) ("[I]f the [action] amounted to a prior restraint, the ability of plaintiffs to relocate and continue their speech elsewhere would be legally irrelevant.").[5]  While the "availability of alternative means of communication is relevant to an analysis of 'time, place, and manner' restrictions," the government here is not attempting to justify the prior restraint as "a time, place, or manner

---

[4] The government is correct that nothing in the legislative history of the Civil Asset Forfeiture Reform Act (CAFRA) suggests that Congress was concerned with hardships unique to operators of websites.  That is likely because Congress never contemplated that CAFRA would be used to seize domain names.

[5] Likewise, regulations that classify speech, even though they do not ban it, can nonetheless infringe the First Amendment.  *See Bantam Books v. Sullivan*, 372 U.S. 58 (1963); *Interstate Circuit, v. City of Dallas,* 390 U.S. 676 (1968).

restriction." *Bolger v. Youngs Drug Products Corp.*, 463 U.S. 60, 69 fn. 18 (1983) (rejecting government's argument that statute did not interfere "significantly" with free speech, even where it applied only to unsolicited mailings and did not bar other channels of communication). Thus, the fact that Puerto 80's discussion forums may be accessible through other domain names does not diminish the First Amendment interest at stake, and is legally irrelevant.

The government's second attack on Puerto 80's First Amendment deprivation argument is that because the government made "repeated offers" to "return the Rojadirecta Domain Names subject to certain conditions," Puerto 80's First Amendment rights can't have been violated. In other words, the government believes that Puerto 80's declination to give up important aspects of its business and refrain from engaging in lawful activity in exchange for the right to engage in lawful speech activity somehow negates the government's impermissible prior restraint on Puerto 80's speech. That is nonsense. Conditioning the exercise of free speech on forbearance from engaging in activity that the government does not like infringes the First Amendment to the same extent as suppressing the speech in the first place. *See Staub v. City of Baxley*, 355 U.S. 313, 322 (1958) ("It is settled by a long line of recent decisions of this Court that an ordinance which . . . makes the peaceful enjoyment of freedoms which the Constitution guarantees contingent upon the uncontrolled will of an official—as by requiring a permit or license which may be granted or withheld in the discretion of such official—is an unconstitutional censorship or prior restraint upon the enjoyment of those freedoms."). Thus, the government's failure to address Puerto 80 and its users' deprivation of First Amendment rights further tips the section 983(f) balance in favor of granting Puerto 80's petition.

### C.    The Domain Names Were Not Used to Commit Criminal Acts, Nor Will They Be Used to Commit Criminal Acts if Returned

The government contends that because the domain names are "likely to be used to commit" additional acts of criminal copyright infringement, they should not be returned to Puerto 80 while the parties litigate over whether Puerto 80's acts, in fact, are criminal. Opp'n at

3.  As explained in its Petition (and as Puerto 80 is prepared to explain in a motion to dismiss),[6] Puerto 80's conduct does not constitute copyright infringement, let alone criminal copyright infringement:  (1) Puerto 80 is not committing "direct" copyright infringement, nor does the government allege that it is; (2) even if Puerto 80's act of "linking" to other websites somehow constituted "indirect" or contributory copyright infringement, there is no criminal liability for such infringement; (3) the government has not charged Puerto 80 with secondary liability under an aiding and abetting or conspiracy theory, and even if it had, those crimes cannot support seizure under the statute; and (4) Puerto 80's conduct cannot be "willful" as a matter of law.

### 1.  Puerto 80 is not directly infringing any work, nor does the government argue that it is.

 In its opposition, the government acknowledges that Puerto 80 is not hosting any material on its servers, but instead "organizes . . . content available on the Internet in a way that is useful to those who seek such materials."  Opp'n at 19.  It is this act of "linking" on which the government bases its charge of infringement.  *See id.*   But the government appears to acknowledge that "linking" does not constitute direct infringement because it only references authority related to contributory infringement and aiding and abetting, not direct infringement.[7] Although the government does not argue that Puerto 80 is committing direct infringement, out of an abundance of caution, we nonetheless explain why "linking" cannot support a charge of criminal copyright infringement by direct infringement.

The elements of criminal infringement are the same as those in a "civil copyright infringement case—ownership of a valid copyright and copying."  *United States v. Larracuente*, 952 F.2d 672 (2d Cir.1992).  Here, as the government essentially concedes, Puerto 80 did not

---

[6] Puerto 80 is prepared to file a motion to dismiss the government's forfeiture complaint in *United States v. Rojadirecta.org, et al*, Civ. No. 11-4139.  On July 15, pursuant to this Court's Individual Rules of Practice, Puerto 80 submitted a letter requesting a pre-motion conference.

[7] The government misleadingly quotes an Ohio state case to suggest that Puerto 80's conduct may implicate direct liability; the government quotes a passage from *Ohio v. Perry*, 697 N.E.2d 624, 628 (Ohio 1998) in which the court stated that "[u]nauthorized posting may also be reviewed as facilitating unauthorized downloading or copying by a third party and as such is also a violation of the exclusive right of reproduction under the copyright law." *Perry*, 697 N.E.2d at 628 (cited in Opp'n at 21-22).  But the "unauthorized posting" referenced in the quote from *Perry* was posting *of the illegal copies of the software itself.  Id.*  That has nothing to do with this case.  *Accord* Miñán Decl. in Support of Petition for Release of Seized Property ¶ 4.

copy anything and cannot be found liable for direct infringement. *See CoStar Grp., Inc. v. LoopNet*, 373 F.3d 544 (4th Cir. 2004) ("Because LoopNet, as an Internet service provider, is simply the owner and manager of a system used by others who are violating CoStar's copyrights and is not an actual duplicator itself, it is not directly liable for copyright infringement.").

As Puerto 80 explained in its petition, courts that have addressed the issue have held unequivocally that linking does not constitute direct infringement. *See, e.g.*, *Online Policy Group v. Diebold, Inc.*, 337 F. Supp. 2d 1195, 1202 n.12 (N.D. Cal. 2004) ("[H]yperlinking per se does not constitute direct copyright infringement because there is no copying[.]"); *Arista Records, Inc. v. MP3Board, Inc.*, 2002 WL 1997918, at *4 (S.D.N.Y. Aug. 29, 2002) (linking to content does not implicate distribution right and thus, does not give rise to liability for direct copyright infringement); *Ticketmaster Corp., v. Tickets.com Inc.*, 2000 WL 525390, *2 (C.D. Cal. Mar. 27, 2000) ("[H]yperlinking does not itself involve a [direct] violation of the Copyright Act (whatever it may do for other claims) since no copying is involved."); *Bernstein v. JC Penney, Inc.*, 1998 WL 906644, at *1 (C.D.Cal. Sept. 29, 1998) (granting motion to dismiss on the ground that hyperlinking cannot constitute direct infringement). The government dismisses the significance of these rulings, arguing that they are "wholly inapposite," but gives no reason why that is. The government also argues that Rojadirecta's linking is not "content neutral" like a search engine such as Google—a complete non-sequitur, given that the cases which hold that linking does not constitute infringement *do not involve search engines*. Moreover, that assertion is just plain wrong: search engines "organize[] links to very specific content in a precise and targeted way," Opp'n at 19; if they did not, their value as a search engine would be quite dubious. *Accord Rosetta Stone Ltd. v. Google, Inc.*, 730 F. Supp. 2d 531, 536 (E.D. Va. 2010) (search engine "allows web users to search the World Wide Web for websites containing particular content").

### 2.   Puerto 80 is not liable for contributory infringement, but even if it were, there is no criminal liability for contributory infringement.

As Puerto 80 explained in its Petition, its operation of the Rojadirecta site does not constitute contributory infringement because it is capable of engaging in—and does engage in—

substantial non-infringing uses.  *See* MPA in Support of Puerto 80's Petition at 15-16.  The government does not address those arguments or the authority Puerto 80 cites, and instead makes the remarkable suggestion that  Puerto 80's failure to "stop an infringing copy from being distributed worldwide constitutes substantial participation in" distribution of copyrighted material.  *See* Opp'n at 21.  That is not the law.  In fact, it is not the law according to the authority to which the government attributes it—the quote, purportedly from *Cubby, Inc. v. CompuServe, Inc.*, 776 F. Supp. 135, 141 (S.D.N.Y. 1991), is not found in *Cubby*.  Rather, it comes from *Religious Tech'y Ctr. v. Netcom On-Line Communication Svcs  Inc.,* 907 F. Supp. 1361, 1374 (N.D. Cal. 1995), in which the court found that a material issue of fact existed on the question of whether an online bulletin board system operator was contributorily liable for distributing material *which was hosted* on its server.  The government makes no attempt to explain how the facts of *Netcom* align with the instant facts, and, indeed, they do not.  But Puerto 80 need not belabor the point, because it is irrelevant.  That is because even if Puerto 80 could be held liable for contributory infringement, such liability would not support criminal charges.

Secondary liability in copyright law is a common law creation that finds no support in the text of the copyright statute.  *See Sony Corp. v. Universal City Studios*, 464 U.S. 417, 434 (1984) ("The Copyright Act does not expressly render anyone liable for infringement committed by another."); *Perfect 10, Inc. v. Visa Int'l Svc. Ass'n,* 494 F.3d 788, 794-95 (9th Cir. 2007) ("Contributory copyright infringement is a form of secondary liability with roots in the tort-law concepts of enterprise liability and imputed intent."); *Demetriades v. Kaufmann*, 690 F. Supp. 289, 291-92 (S.D.N.Y. 1988) ("Federal copyright law, unlike patent law, does not expressly create any form of derivative, third-party liability.").  Accordingly, the reach of the criminal copyright statute—which is predicated on liability for acts proscribed by the copyright statute— does not extend to contributory infringement.  *Accord United States v. Lanier*, 520 U.S. 259, 267 fn. 6 (1997) ("Federal crimes are defined by Congress, not the courts[.]"); *Liparota v. United States*, 471 U.S. 419, 424, (1985) (same); *Dowling v. United States*, 473 U.S. 207, 213, 228-29 (1985) (in determining whether Congress intended to criminally proscribe a particular act, a "narrow interpretation" is appropriate).  Moreover, we are not aware of any instance in which

someone has been held criminally liable for "contributory infringement" under the copyright statute alone, nor does the government cite any.  On these facts, due process precludes holding Puerto 80 criminally liable for indirect copyright infringement.  *Accord Lanier*, 520 U.S. at 266.

### 3. The government has not charged Puerto 80 with aiding and abetting, and even if it did, those crimes would not support the seizure.

Perhaps recognizing that there is no "criminal contributory infringement," the government instead suggests that Puerto 80 may be liable under a theory of aiding and abetting. This, in fact, is precisely the view taken by the Department of Justice in its Intellectual Property Prosecution Manual.  Supp. Rosloff Decl. Exh. 3 at II.F.  *Accord In re Aimster Copyright Litigation*, 334 F.3d 643, 651 (7th Cir. 2003) (aiding and abetting is "the criminal counterpart to contributory infringement").  However, the domain names were not seized based on an allegation of aiding and abetting, and the government chose not to bring those charges in its forfeityre complaint.  Even if it had, those charges would not support forfeiture of the domain names because *the forfeiture statute does not permit seizure based on those crimes.  See* 18 U.S.C. § 2323 (permitting seizure based on alleged violations of specific statutes, of which 18 U.S.C. §§ 2 and 371 are not among).

### 4. The government cannot show willfulness.

The government cannot allege willfulness as a matter of law.  Contrary to the government's contention that the standard for criminal infringement is the same as for civil infringement, "willfulness" in the criminal copyright context means the intent standard articulated by the Supreme Court in the context of criminal tax evasion and other criminal statutes.[8]  In order to allege willfulness under the criminal copyright statute, "something more is required than the doing of the act proscribed by the statute." *Screws v. United States*, 325 U.S. 91 (1945).   The government must show that the defendant acted with the specific intent to infringe—that "the defendant acted with the purpose of depriving the victim of the interest

---

[8] *See United States v. Wise,* 550 F.2d 1180, 1186 (9th Cir. 1977) (defining willfulness by reference to *Screws v. United States*, 325 U.S. 91 (1945)); *United States v. Heilman*, 614 F.2d 1133, 1137 (7th Cir. 1980) (same); *United States v. Acevedo-Cruz*, 2006 WL 448680 *3 (D.P.R. Feb. 23, 2006) (defining willfulness by reference to *Cheek v. United States*, 498 U.S. 192 (1991)); *United States v. Moran*, 757 F. Supp. 1046, 1049 (D. Neb. 1991) (same).

protected by that right." *United States v. Heilman*, 614 F.2d 1133, 1137 (7th Cir. 1980); *United States v. Wise*, 550 F.2d 1180, 1186 (9th Cir. 1977).[9]

The government does not offer any convincing explanation why two Spanish courts' validation of Puerto 80's operations does not offer persuasive—if not conclusive—evidence that Puerto 80 lacked the requisite intent.  Indeed, the Justice Department's own manual states that evidence negating willfulness includes "[e]vidence of the defendant's good-faith belief that his conduct was lawful, coupled with rational attempts to comply with the copyright law as supposedly understood by the defendant…."  Supp. Rosloff Decl. Exh. 3 at II.B.2.b.  Here, Puerto 80's good-faith belief that its actions are legal are based on the holdings of two courts.[10]

Finally, willfulness cannot be found where civil liability is unclear.  Given that numerous courts have found that linking does not violate the Copyright Act, *see supra* Section II.C.1, the government cannot argue that Puerto 80 should be criminally liable for linking.  House Report, Copyright Felony Act, H.R. Rep. No. 997, 102nd Cong., 2d Sess. 1992, 1992 U.S.C.C.A.N. 3569, 3573 P.L. 102-997 ("In cases where civil liability is unclear—whether because the law is unsettled, or because a legitimate business dispute exists—the Committee does not intend to establish criminal liability.").

## III.    CONCLUSION

For the foregoing reasons, Puerto 80 respectfully requests that the Court order the prompt release of its domain names pending the final disposition of the government's forfeiture case.

---

[9] The government does not explain how *United States v. Backer*, 134 F.2d 533, 535 (2d Cir. 1943) is still controlling, given that it was decided before the 1976 Copyright Act and the 1997 amendments that redefined criminal copyright infringement, and cases since then have clarified that the "willfulness" standard for criminal infringement is the same as for other crimes.  In any event, Puerto 80's conduct cannot be adjudged willful unde the Backer standard.

[10] The government's argument that the Berne Convention is not self-executing misses the point. "[U]nder the Berne Convention, all states must guarantee minimum rights . . . and it is plausible that the application of American law would yield outcomes roughly equivalent to those called for by the application of foreign law in a number of instances.  Nonetheless, extending the reach of American copyright law likely would produce difficult choice-of-law problems."  *Subafilms, Ltd. v. MGM-Pathe Commc'ns Co*., 24 F.3d 1088, 1098 (9th Cir. 1994).  In other words, it is questionable whether the government can even prosecute Puerto 80 under U.S. copyright laws for conduct that occurred entirely abroad.  *See Omega S.A. v. Costco Wholesale Corp*., 541 F.3d 982, 988 (9th Cir. 2008) (Copyright "Act presumptively does not apply to conduct that occurs abroad even when that conduct produces harmful effects within the United States").

DURIE TANGRI LLP

By:   s/Johanna Calabria

Dated:  July 18, 2011

David Spears
Charlita Mays
SPEARS & IMES LLP
51 Madison Avenue, 25th Floor
New York, NY 10010
Tel. (212) 213-6996

*Attorneys for Defendant*
PUERTO 80 PROJECTS, S.L.U.

Mark A. Lemley (*Pro Hac Vice*)
Ragesh K. Tangri (*Pro Hac Vice*)
Johanna Calabria (SBN JC3915)
Genevieve P. Rosloff (*Pro Hac Vice*)
217 Leidesdorff Street
San Francisco, CA  94111
Tel. (415) 362-6666

*Attorneys for Defendant*
PUERTO 80 PROJECTS, S.L.U.